UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ROBERT E. LIFSON, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>ASSISTED LIVING CONCEPTS, INC. and LAURIE A. BEBO,<br><br>       Defendants. | Case No. 2:12-CV-00884-JPS |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENSION TRUST FUND FOR OPERATING ENGINEERS FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

                                                                         **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF THE PENDING ACTION ........................................................................... 2

ARGUMENT ............................................................................................................................ 4

      A.     Operating Engineers Should Be Appointed Lead Plaintiff .................................... 5

            1.     Operating Engineers Believes That It Has The Largest Financial Interest In The Relief Sought By The Class ............................................................ 5

            2.     Operating Engineers Otherwise Satisfies The Requirements Of Rule 23 .. 5

      B.     The Court Should Approve Operating Engineers' Selection Of Lead Counsel ................................................................................................................... 8

CONCLUSION ......................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Anadarko Petroleum Corp. Securities Litigation*,
   No. 12-cv-900 (KPE) (S.D. Tx.)..................................................................................................7

*In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income
   Security Act (ERISA) Litigation*,
   No. 09-md-2058 (PKC) (S.D.N.Y.).............................................................................................8

*In re Lehman Brothers Equity/Debt Securities Litigation*,
   08-cv-5523 (LAK) (S.D.N.Y.).....................................................................................................7

*In re Lehman Brothers Equity/Debt Securities Litigation*,
   No. 08-cv-5523 (LAK) (S.D.N.Y.)..............................................................................................8

*In re Nortel Networks Corp. Securities Litigation*,
   No. 05-md-1659 (LAP) (S.D.N.Y.) ............................................................................................8

*In re Wachovia Preferred Securities and Bond/Notes Litigation*,
   No. 09-cv-6351 (RJS) (S.D.N.Y.)...............................................................................................8

*In re WorldCom, Inc. Securities Litigation*,
   02-cv-03288 (DLC) (S.D.N.Y.)...................................................................................................8

*Johnson v. Tellabs, Inc.*,
   214 F.R.D. 225 (N.D. Ill. 2002)...................................................................................................6

*Maiden v. Merge, Inc.*,
   No. 06-cv-00349 (RTR) (E.D. Wis) (Randa, J.) .........................................................................8

*Maiden v. Merge Tech., Inc.*,
   No. 06-cv-394, 2006 WL 3404777 (E.D. Wis. Nov. 21, 2006)........................................5, 6, 7

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ............................................................................................4, 6

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*,
   No. 09-cv-1392 (JSR) (S.D.N.Y.)...............................................................................................8

**STATUTES**

15 U.S.C. §§ 78(j)(b) and 78(t)...........................................................................................................1

15 U.S.C. § 78u-4(a)(3)(A), (B), (B)(iii), B(iii)(I), B(iii)(I)(cc), (B)(v) .............................1, 4, 5, 8

## PRELIMINARY STATEMENT

Currently pending in this District is a securities class action (the "Action") brought on behalf of all individuals and entities who purchased or otherwise acquired the Class A common stock of Assisted Living Concepts, Inc. ("Assisted Living" or the "Company") between March 12, 2011 and August 6, 2012, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (15 U.S.C. §§ 78(j)(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) by Assisted Living and the Company's former Chief Executive Officer, Laurie A. Bebo ("Bebo").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also whether such movant has made a showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, the Pension Trust Fund for Operating Engineers ("Operating Engineers") is the "most adequate plaintiff" by virtue of the approximately $173,000 in losses that it incurred on its investments in Assisted Living common stock.[1]

Operating Engineers also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class. Indeed, Operating Engineers is a paradigmatic Lead

---

[1] Operating Engineers' PSLRA-required Certification is provided as Exhibit A to the Declaration of Matthew W. O'Neill in Support of the Motion of the Pension Trust Fund for Operating Engineers for Appointment as Lead Plaintiff, and Approval of Its Selection of Lead Counsel ("O'Neill Decl."). In addition, charts setting forth calculations of Operating Engineers' losses are provided as Exhibit B to the O'Neill Decl.

Plaintiff under the PSLRA because it is a sophisticated institutional investor with a real financial interest in the litigation, and has experience serving as Lead Plaintiff in complex securities class actions and supervising the work of outside counsel. As such, Operating Engineers has both the incentive and ability to supervise and monitor counsel. Further, Operating Engineers fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. Operating Engineers has selected Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), a law firm with substantial experience successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Operating Engineers respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## SUMMARY OF THE PENDING ACTION

Assisted Living operates senior living residences that purportedly seek to provide senior citizens with a supportive, home-like setting with care and services, including 24-hour assistance with activities of daily living, medication management, life enrichment, health and wellness, and other services. In January 2008, the Company acquired eight facilities leased from Ventas Realty, Limited Partnership ("Ventas"). Under the terms of the lease, Assisted Living was obligated to maintain an overall occupancy rate of at least 82%; maintain all regulatory licenses to operate the leased facilities; and make a continuing warranty that it would not commit any act that would jeopardize the facilities' ability to operate, among other things.

Throughout the Class Period, the Company stated in its public filings with the Securities and Exchange Commission ("SEC") that it was in compliance with the occupancy and operating covenants of the Ventas lease. Those statements were false.

2

The truth regarding Assisted Living's non-compliance with the Ventas lease provisions began to emerge on May 4, 2012 when the Company disclosed that Ventas had filed a lawsuit seeking a declaratory judgment against Assisted Living. The complaint in that action alleged that Assisted Living was in default and material breach of the Ventas lease and had forfeited its right to possession of the leased facilities. Specifically, according to the Ventas complaint, state regulators in Georgia and Alabama—where six of the eight leased facilities are located—served notices in February and March 2012 of their intent to revoke licenses for three of the facilities. The notices detailed that the facilities were not in substantial compliance with applicable rules and regulations, had falsified records, and that the conditions of the facilities posed an imminent and serious threat to the physical and emotional health and safety to persons in care. The Company also disclosed that Assisted Living's Board of Directors determined to investigate irregularities in connection with the Ventas lease. These disclosures caused the price of Assisted Living stock to drop $2.35 per share, or over 12%, to close at $16.69 per share.

On May 11, 2012, Assisted Living filed a Form NT 10-Q with the SEC stating that it would be unable to timely file its first quarter 2012 Form 10-Q due to the Board's investigation. In response, the price of the Company's stock dropped an additional $1.30 per share, or over 7%, to close at $16.28 per share. Several days later, on May 14, 2012, the Company revealed that it had received a letter from Ventas asserting that the Company violated the lease in several ways, including by fraudulently treating units leased to employees as bona fide rentals to third parties and, therefore, may have manipulated the occupancy covenants. Such actions constituted events of default, according to the letter.

On May 30, 2012, Assisted Living announced the termination of Defendant Bebo as Chief Executive Officer. This news caused the price of the Company's stock to decline $1.20 per share, or 8.3%, to close at $13.28 per share.

On June 15, 2012, Assisted Living settled the Ventas litigation. As a result of the settlement, the Company reported a net loss of $19.5 million for the first six months of 2012, a loss nearly equal in size to Assisted Living's entire net income for 2011.

Then, on August 7, 2012, Assisted Living filed a Form 8-K with the SEC announcing an SEC investigation in the Company, the SEC's subpoena of documents related to Assisted Living's compliance with the occupancy covenants in the Ventas Lease, and the leasing of units for employee use. This disclosure caused the price of Assisted Living stock to decline $2.88 per share, or 26.7%, to close at $7.89 per share.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). Here, the first such action was filed on August 29, 2012. The notice of the pendency of that action was published to investors on the same day. Accordingly, the deadline to seek Lead Plaintiff status is October 29, 2012.[2] Operating Engineers satisfies the 60-day deadline by filing its Motion within 60 days of the first-published notice of the pendency of the action. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Investment Corp.*, 256 F.R.D. 620 at 622-23 (E.D. Wis. 2009) ("Once notice has been filed, potential lead plaintiffs have sixty days to file a motion to serve as lead plaintiff of the purported class.") *citing* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

---

[2] A copy of the notice of the action is attached as Exhibit C to the O'Neill Decl.

### A. Operating Engineers Should Be Appointed Lead Plaintiff

Operating Engineers respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). When selecting Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.*; *see also Maiden v. Merge Tech., Inc.*, No. 06-cv-394, 2006 WL 3404777, at *2 (E.D. Wis. Nov. 21, 2006).

#### 1. Operating Engineers Believes That It Has The Largest Financial Interest In The Relief Sought By The Class

Operating Engineers should be appointed Lead Plaintiff because it believes that it has the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, Operating Engineers sustained total losses of approximately $173,000 from its Class Period transactions in Assisted Living stock. *See* O'Neill Decl. at Exhibits A and B. To the best of Operating Engineers' knowledge, there are no other applicants seeking Lead Plaintiff appointment that have a larger financial interest in the litigation. Accordingly, Operating Engineers has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

#### 2. Operating Engineers Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Operating Engineers otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy

requirements.  *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002) (citation omitted). Here, Operating Engineers unquestionably satisfies both requirements.

Operating Engineers' claims are typical of the claims of other purchasers of Assisted Living stock.  Typicality can be established by showing that "a plaintiff's claims 'arise[] from the same event or course of conduct that gives rise to the claims of other class members.'" *Merge*, 2006 WL 3404777 at *4.  Here, Operating Engineers' legal claims are nearly identical to the legal claims of the other Class members.  Like all other Class members: Operating Engineers (1) purchased Assisted Living stock during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby.  *See id*.  As such, Operating Engineers is a typical Class representative.

Operating Engineers likewise satisfies the adequacy requirement of Rule 23.  Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class."  *MGIC*, 256 F.R.D. at 623.  Adequacy is established where the proposed lead plaintiff's claims (1) "are not antagonistic or in conflict with those of the class; (2) [the proposed lead plaintiff] has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) [the proposed lead plaintiff] is represented by competent, experienced counsel who [is] able to prosecute the litigation vigorously."  *Tellabs*, 214 F.R.D. at 228-229 (citations omitted).  Operating Engineers satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims.  Operating Engineers' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way.  There are no facts to suggest any actual or potential conflict of interest or other antagonism between Operating Engineers and other Class members.  To further illustrate Operating Engineers' adequacy, it submits herewith a

Certification affirming its understanding of the duties owed to Class members through its commitment to oversee and monitor the prosecution of this action in the best interests of the Class. *See* O'Neill Decl. at Exhibit A. Through its Certification, Operating Engineers demonstrated that it accepts the fiduciary obligations that it will assume if appointed Lead Plaintiff in this action. *See id.*

Further, Operating Engineers is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Merge*, 2006 WL 3404777, at *1-2 ("The PSLRA was enacted 'to increase the likelihood that institutional investors will serve as lead plaintiffs'"). Operating Engineers also has experience in serving as Lead Plaintiff on behalf of a class of investors. For example, Operating Engineers served as a Lead Plaintiff in *In re Lehman Brothers Equity/Debt Securities Litigation*, 08-cv-5523-LAK (S.D.N.Y.) which recovered $516 million on behalf of the class. Operating Engineers is also currently serving as Lead Plaintiff in *In re Anadarko Petroleum Corp. Securities Litigation,* No. 12-cv-900-KPE (S.D. Tx.), among other cases.

Finally, Operating Engineers has demonstrated its adequacy through its selection of Bernstein Litowitz to serve as Lead Counsel to represent the Class in this action. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

7
Case 2:12-cv-00884-JPS   Filed 10/29/12   Page 11 of 14   Document 11

**B.	The Court Should Approve Operating Engineers' Selection Of Lead Counsel**

The Court should approve Operating Engineers' selection of Bernstein Litowitz to serve as Lead Counsel on behalf of the Class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. Operating Engineers has retained Bernstein Litowitz as proposed Lead Counsel to represent the Class.

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Biography, attached as Exhibit D to the O'Neill Decl. Bernstein Litowitz served as Co-Lead counsel in *In re WorldCom, Inc. Securities Litigation*, 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the Class. Bernstein Litowitz also served as Lead Counsel in a securities class action in this District, *Maiden v. Merge, Inc.*, No. 06-cv-00349-RTR (E.D. Wis) (Randa, J.), and recovered $16 million on behalf of injured investors. Other significant examples in which courts have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09-md-2058-PKC (S.D.N.Y.) (recovering $2.425 billion for investors, subject to court approval); *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659-LAP (S.D.N.Y.) (recovering $1.3 billion for investors), *In re Wachovia Preferred Securities and Bond/Notes Litigation,* No. 09-cv-6351-RJS (S.D.N.Y.) (recovering $627 million for investors), *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-cv-5523-LAK (S.D.N.Y.) (recovering $516 million for investors), and *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, No. 09-cv-1392-JSR (S.D.N.Y.) (recovering $315 million for investors). Bernstein Litowitz also maintains an office in Chicago, Illinois, through which it

conducts and supervises securities litigations in Seventh Circuit District Courts. Accordingly, the Court should approve Operating Engineers' selection of Bernstein Litowitz to serve as Lead Counsel for the Class.

## CONCLUSION

For the reasons discussed above, Operating Engineers respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of Bernstein Litowitz as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: October 29, 2012                    Respectfully Submitted,

**FOX, O'NEILL & SHANNON, S.C**.

/s/ Matthew W. O'Neill
Matthew W. O'Neill
622 North Water Street, #500
Milwaukee, WI 53202
Telephone: 414-273-3939
Facsimile: 414-273-3947
mwoneill@foslaw.com

*Proposed Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Gerald H. Silk
Ross Shikowitz
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
ross@blbglaw.com

Avi Josefson
875 North Michigan Avenue
Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Blair Nicholas
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0700
Facsimile: (858) 793-0323
blairn@blbglaw.com

*Counsel for Proposed Lead Plaintiff the Pension Trust Fund for Operating Engineers, and Proposed Lead Counsel for the Class*

10