UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PENSION TRUST FUND FOR
OPERATING ENGINEERS and ROBERT
LIFSON,

                          Plaintiffs,

        v.

ASSISTED LIVING CONCEPTS, INC.
and LAURIE BEBO,

                          Defendants.

Case No. 12-C-884-JPS

<u>CLASS ACTION</u>

Date:        December 19, 2013
Time:        10:00 a.m.
Courtroom:   425
Judge:       Hon. J.P. Stadtmueller

**LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES;
<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF</u>**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to the Court's Preliminary Approval Order (ECF No. 73), on December 19, 2013, at 10:00 a.m. before the Honorable J.P. Stadtmueller of the United States District Court for the Eastern District of Wisconsin, 362 United States District Courthouse, 517 East Wisconsin Avenue, Courtroom 425, Milwaukee, Wisconsin, Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") on behalf of itself and Liaison Counsel Fox, O'Neill & Shannon, S.C. (collectively, "Plaintiffs' Counsel") will and hereby does move the Court for an order granting attorneys' fees and reimbursement of litigation expenses in the above-captioned securities class action.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Benjamin Galdston in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, the exhibits thereto, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   HISTORY OF THE LITIGATION ................................................................................... 3

III.  THE REQUESTED FEES ARE FAIR AND REASONABLE ......................................... 3

      A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees
            From The Settlement Fund Obtained ..................................................................... 3

      B.    The Contingent Nature Of The Litigation Favors An Award Of
            25% Of The Settlement Amount ............................................................................. 5

      C.    The Requested Fee Is Consistent With, Or Less Than, Seventh
            Circuit Authority .................................................................................................... 9

      D.    Lead Counsel Provided The Class With Quality Legal Services
            That Produced Excellent Results .......................................................................... 11

      E.    Lead Plaintiff Independently Assessed And Approved The 25%
            Fee Request ........................................................................................................... 12

      F.    The Reaction Of Class Members Supports The Reasonableness Of
            The Requested Award ............................................................................................ 13

IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND
      WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
      OBTAINED ...................................................................................................................... 13

V.    CONCLUSION ................................................................................................................ 14

Case 2:12-cv-00884-JPS   Filed 11/14/13   Page 3 of 22   Document 75

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anixter v. Home-Stake Prod. Co.,*
   77 F.3d 1215 (10th Cir. 1996) ..................................................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................................9, 14

*Backman v. Polaroid Corp.,*
   910 F.2d 10 (1st Cir. 1990) .......................................................................................8

*In re BankAtlantic Bancorp, Sec. Litig.,*
   No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25,
   2011) ........................................................................................................................8

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985) .................................................................................................3

*The Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) .................................................................................................3

*In re China Sunergy Sec. Litig.,*
   No. 07 Civ. 78595 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011).............11

*City of Detroit v. Grinnell Corp.,*
   356 F. Supp. 1380 (S.D.N.Y. 1972).......................................................................11

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)...................................................................................11

*City of Livonia Emps.' Ret. Sys. and Local 295/Local 851 v. Boeing Co.,*
   711 F.3d 754 (7th Cir. 2013) ...................................................................................7

*In re Cont'l Ill. Sec. Litig.,*
   962 F.2d 566 (7th Cir. 1992) ..............................................................................4, 6

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) .................................................................................6

*In re Continental Ill. Sec. Litig.,*
   962 F.2d 566 (7th Cir. 1992) .................................................................................14

*Cooper v. IBM Pers. Pension Plan,*
   No. 99-829-GPM, 2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) ............4

Case 2:12-cv-00884-JPS   Filed 11/14/13   Page 4 of 22   Document 75

*In re Digi Int'l, Inc. Sec. Litig.*,
    14 Fed. Appx. 714 (8th Cir. 2001) ........................................................................8

*Donovan v. Estate of Frank E. Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ...............................................................................5

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ..........................................................................3, 4, 5

*Geffon v. Micrion Corp.*,
    249 F.3d 29 (1st Cir. 2001) ...................................................................................8

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................9

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) ................................................................................8

*Heekin v. Anthem, Inc.*,
    No. 05-cv-01908-TWP-TAB, 2012 WL 5878031 (S.D. Ind. Nov. 20, 2012) ......................2, 6

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..............................11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ..........................................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...........................8

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..........................................................................4, 5

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ..................................................................7

*Levitin v. PaineWebber, Inc.*,
    159 F.3d 698 (2d Cir. 1998) .................................................................................8

*Longman v. Food Lion, Inc.*,
    197 F.3d 675 (4th Cir. 1999) ...............................................................................8

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) .........................................................3, 4, 6, 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................11

Case 2:12-cv-00884-JPS   Filed 11/14/13   Page 5 of 22   Document 75

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ............................................................7

*Miller v. Asensio & Co.*,
    364 F.3d 223 (4th Cir. 2004) ...............................................................7

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ...............................................................8

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)..................................................................7

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ...............................................................8

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...........................................................8

*In re Silicon Graphics Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ...............................................................8

*Silver v. H&R Block, Inc.*,
    105 F.3d 394 (8th Cir. 1997) ...............................................................8

*Silverman v. Motorola Solutions, Inc.*,
    -- Fed. Appx. --, 2013 WL 4082893 (7th Cir. Aug. 14, 2013) (unpubl.)........................ passim

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ...............................................................9

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...................................................... passim

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) ...............................................................4

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...................................................... passim

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................3

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ...............................................................8

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................3

Case 2:12-cv-00884-JPS   Filed 11/14/13   Page 6 of 22   Document 75

## Statutes and Other Authorities

15 U.S.C. § 78u-4 ...................................................................................................................3

*4 Newberg on Class Actions,* § 14:6 (4th ed. 2002)....................................................................10

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards* 7 Journal of Empirical Legal Studies, 811 (2010) ......................................................10

Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis* (Cornerstone Research 2012) ...............................................................................12

NERA, *Recent Trends in Securities Class Action Litigation: 2011 Mid-Year Review* (NERA July 2011) ....................................................................................................................10

NERA, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* (NERA Nov. 1996) ...................................................................................................10

Renzo Comolli, Ron Miller, John Montgomery & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review* (NERA Economic Consulting 2012)......................................................................................................................12

Ronald I. Miller, Ph.D., *et al., Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?* (NERA Apr. 2006), available at http://www.nera.com/67_5112.htm ..........................................................................................6

Theodore Eisenburg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 Journal of Empirical Legal Studies (2004)..........................................13

# I.    PRELIMINARY STATEMENT

Lead Plaintiff and Lead Counsel have succeeded in reaching a Settlement in the amount of $12 million for the benefit of the Class.[1]  Based on Lead Plaintiff's expert's estimate of recoverable damages, this recovery represents nearly 40% of total recoverable damages – a significant recovery by any measure.

The Settlement was achieved only after Lead Counsel conducted an extensive investigation, including interviews with more than seventy confidential witnesses and analysis of thousands of documents concerning regulatory proceedings against assisted living and senior care facilities operated by Defendant Assisted Living Concepts, Inc. ("ALC") and other legal proceedings against ALC; prepared and filed a highly detailed and comprehensive 109-page amended complaint; sought and obtained relief from the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); largely defeated Defendants' motions to dismiss; sought and reviewed over 250,000 pages of documents from Defendants and relevant third parties; prepared and served written discovery; noticed or provided notice of intent to schedule at least thirteen depositions, including depositions of the Defendants and directors and top officers of ALC; and prepared for the upcoming trial that was scheduled to begin in December 2013.  *See* Declaration of Benjamin Galdston in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Reimbursement of Litigation Expenses ("Galdston Declaration" or "Galdston Decl."), submitted herewith.

Lead Counsel undertook the prosecution on an entirely contingent basis.  As compensation for its efforts, Lead Counsel is apply for fees constituting 25% of the Settlement Fund and reimbursement of litigation expenses incurred by Plaintiffs' Counsel in the amount of $54,926.82, plus interest thereon.  Lead Counsel's requested fee of 25% is consistent with, or less than, fee percentages in the "private market" for legal services, and fee percentages granted

---

[1]  All capitalized terms that are not defined herein are defined in the Stipulation of Settlement, which was filed on September 6, 2013 (ECF No. 70-1).

by district courts within, and affirmed by, the Seventh Circuit. Indeed, just recently the Seventh Circuit affirmed a 27.5% fee award in a $200 million securities class action settlement. *See Silverman v. Motorola Solutions, Inc.*, -- Fed. Appx. --, 2013 WL 4082893 (7th Cir. Aug. 14, 2013) (unpubl.); *see also Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) (affirming fee award of 30% of $7.25 million securities class action settlement); *Heekin v. Anthem, Inc.,* No. 05-cv-01908-TWP-TAB, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) ("[T]he Court finds there is support from other cases in this Circuit and nationally to support a percentage market rate of 33.3%"; collecting fee decisions within the Seventh Circuit).

The Court-appointed institutional investor Lead Plaintiff approves of the fee and expense request as fair and reasonable. The approval of this sophisticated institutional investor is especially significant in light of its active involvement in the prosecution and settlement of this case. *See* Lead Plaintiff Declaration, attached as Exhibit A to the Galdston Decl.

In addition, pursuant to the Court's Preliminary Approval Order, copies of the Notice have been disseminated to more than 10,000 potential Class Members and a Summary Notice published in the national edition of *The Investor's Business Daily* and transmitted over the *PR Newswire*. *See* Declaration of Adam Walter Re Notice Dissemination and Publication ("Walter Decl."), attached as Exhibit B to the Galdston Decl. ¶¶2-9. The Court-approved Notice advised potential Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and reimbursement of litigation expenses in an amount not to exceed $85,000.00, plus interest thereon. While the deadline for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no objection to Lead Counsel's attorneys' fee and expense request has been received. The lack of any objections – by institutional investors or otherwise – is particularly notable in light of Lead Plaintiff's expert's estimate that institutional investors held over 80% of the ALC Stock during the Class Period. *See* Galdston Decl. ¶57; *Motorola,* 2013 WL 4082893, at *3 (finding relevant that there were no objections by institutional investors who held over 70% of the securities).

## II.    HISTORY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the accompanying Galdston Declaration for a description of the procedural history of the Litigation, the claims asserted, the investigation and discovery undertaken, the negotiations of the Settlement, and the risks and uncertainties involved in prosecuting this Litigation.

## III.    THE REQUESTED FEES ARE FAIR AND REASONABLE

### A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees From The Settlement Fund Obtained

As this Court has recognized in other common fund class actions, class counsel that obtains a settlement or judgment creating a commonly-held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund.  *See, e.g.*, *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (Stadtmueller, J.) (citing *The Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994)).  The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who may have small claims.  To those ends, the Supreme Court has observed that private securities actions, such as the instant Litigation, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Commission] action[]'" brought by the U.S. Securities and Exchange Commission ("SEC").[2]

The text of the PSLRA also supports awarding attorneys' fees in securities class actions using the percentage-of-the-fund method, as it provides that "[t]otal attorneys' fees and expense awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. § 78u-4; *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (observing that the PSLRA contemplates that

---

[2]  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

"the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

While the Seventh Circuit has noted that "the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court," it has recognized the advantages of applying the percentage-of-the-recovery method, including its relative objectivity and ease of administration. *See Florin*, 34 F.3d at 566. The percentage-of-the-fund method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See*, *e.g.*, *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the market rate.") (emphasis in original), *quoted in McKinnie*, 678 F. Supp. 2d at 815. "A contingency fee arrangement is appropriate in such a case because it insulates the plaintiffs from any economic risk if their litigation is ultimately unsuccessful." *McKinnie,* 678 F. Supp. 2d at 815.

In determining the appropriate fee percentage in common fund cases, the Seventh Circuit recently confirmed that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Motorola*, *supra*, 2013 WL 4082893, at *1 (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("Synthroid I"); *In re Synthroid Mktg Litig.*, 325 F.3d 974, 975 (7th Cir. 2003)); *see also McKinnie*, 678 F. Supp. 2d at 814 ("[C]ourts must attempt to award the market price for legal services when determining appropriate fees in common-fund cases, 'in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'") (quoting *AON Corp.*, 415 F.3d at 598) (quoting *Synthroid Mktg. Litig.*, 264 F.3d 712 )).

In making its determination, the Court must consider "the risk of nonpayment a firm agrees to bear . . . the quality of [the firm's] performance . . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case." *Synthroid I*, 264 F.3d at 721. Also relevant to this inquiry is an assessment of "the riskiness of the litigation by measuring the probability of

success of this type of case at the outset of the litigation." *Florin*, 34 F.3d 565 (emphasis omitted); *see also Cooper v. IBM Pers. Pension Plan*, No. 99-829-GPM, 2005 U.S. Dist. LEXIS 17071, at *24 (S.D. Ill. Aug. 16, 2005) (awarding a 28.5% fee on a $231 million settlement fund).

For the reasons set forth below, and those contained in the declarations of Lead Counsel and Lead Plaintiff, Lead Counsel respectfully submits that the results achieved, in conjunction with the contingent nature and risks of the Litigation, and the quality and extent of work Lead Counsel provided to the Class in efficiently generating the $12 million settlement, justify a fee award of 25%.

### B. The Contingent Nature Of The Litigation Favors An Award Of 25% Of The Settlement Amount

As previously noted by the Seventh Circuit, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." *Synthroid I*, 264 F.3d at 721; *see AON Corp.*, 415 F.3d at 600 (finding it relevant that class counsel "was taking on a significant degree of risk of nonpayment with the case"; citing district court's hearing transcript: "[T]he Court believes that counsel adequately pressed this suit and took it on a contingent basis. [In t]hese cases, obviously, [it is] not easy to prove securities fraud. You have to prove fraud. Usually it's negligence rather than fraud."); *see also Donovan v. Estate of Frank E. Fitzsimmons,* 778 F.2d 298, 309 (7th Cir.1985) (noting the risk of losing on the merits and the time value of money among the factors to be considered in evaluating the reasonableness of a settlement).

The Seventh Circuit recently re-confirmed its recognition that "[c]ontingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Motorola*, 2013 WL 4082893, at *2 (citing *Kirchoff v. Flynn*, 786 F.2d 320).

Here, while Lead Counsel ultimately prevailed in obtaining an outstanding recovery for the Class through zealous prosecution of Lead Plaintiff's claims, Lead Counsel assumed a significant risk that Defendants would successfully defend this case during motions to dismiss,

class certification, summary judgment, trial or possible appeals, and the Class (and Lead Counsel) would recover nothing. Indeed, while courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). Empirical data further bears out the increasing uncertainty in securities class action recoveries. According to a 2006 study by NERA Economic Consulting ("NERA"), by that year securities fraud dismissal rates had *doubled* since the PSLRA's 1995 passage, accounting for 40.3% of dispositions.[3]

In prosecuting this Litigation for the benefit of the Class, Plaintiffs' Counsel expended 3,050.2 hours of attorney and paraprofessional time, generating a "lodestar" of $1,556,858.25 and litigation expenses of $54,926.82, all of which was subject to the real risk of total loss.[4] As this Court has recognized, "[h]owever, the total hours that counsel expended on the case is not the determining factor because the court does not apply a 'lodestar' method for calculating fees in a class action common fund settlement such as this one. The 'percentage of the fee' method is preferable because it more closely replicates the contingency fee market rate for counsel's legal services. Indeed, 'class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.'" *McKinnie*, 678 F. Supp. 2d at 816 (quoting *Cont'l Ill. Sec. Litig.*, 962 F.2d at 572).

The Seventh Circuit does not require district judges to conduct a lodestar cross-check. *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) (this Court has "never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach"); *see also Heekin*, 2012 WL 5878032, at *2 (overruling objection seeking detailed billing records, finding

---

[3] *See* Ronald I. Miller, Ph.D., *et al.*, *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?* (NERA Apr. 2006), available at http://www.nera.com/67_5112.htm.

[4] *See* Exhibits C-1 and C-2 to Galdston Declaration.

that the objector "overstates the importance of the lodestar method in this [Seventh] Circuit"). In any event, even under a lodestar cross-check, the fee request represents only a 1.9 risk multiplier on Plaintiffs' Counsel's lodestar, which is well within the range of reasonableness in common fund cases. Indeed, in *Motorola*, the Seventh Circuit's affirmance of the 27.5% fee award of the $200 million securities class action settlement represented a much higher risk multiplier of 3.2. *See* Response Brief, Case No. 12-2354 (7th Cir. filed Sept. 18, 2012), ECF No. 48 at p. 75; *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practice Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (approving fee award of over $27 million in consumer class action, resulting in a risk multiplier of 2.07).

Here, coming into this Litigation, Lead Plaintiff and Lead Counsel risked being unable to: (i) plead falsity with particularity; (ii) plead a strong inference of Defendants' scienter; (iii) sufficiently show that Defendants' misstatements were materially false; and (iv) demonstrate loss causation and damages. Each of these hurdles are required elements of securities fraud actions brought under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act), and federal courts regularly dismiss cases for a failure to adequately plead (or prove) any of them. *See*, *e.g.*, *City of Livonia Emps.' Ret. Sys. and Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013) (affirming district court's dismissal for failure to sufficiently allege scienter); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008) (affirming dismissal for failure to plead loss causation, scienter, and falsity); *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000) (defendants' alleged misstatements immaterial as a matter of law); *Miller v. Asensio & Co.*, 364 F.3d 223, 235 (4th Cir. 2004) (upholding jury verdict finding no provable damages).

Here, the Court, in fact, dismissed certain claims alleged in the Complaint, and there was a risk that the remaining claims could be dismissed at the summary judgment stage, or that the jury could determine that liability was not established. For example, Lead Plaintiff expected that Defendants would argue that some or all of the remaining actionable public statements were technically true or immaterial as a matter of law, or that Lead Plaintiff would be unable to

establish the requisite mental state (scienter) for the alleged false statements, including because Defendants would seek to establish that they consulted with internal accountants, an outside auditor, and/or outside counsel. Lead Plaintiff also expected that Defendants would argue that, even if Lead Plaintiff was able to establish the falsity and materiality of the alleged misstatements, and that Defendants had the requisite scienter, Lead Plaintiff would be unable to establish loss causation, *i.e.*, that the stock price drops were caused by the revelation of the falsity of the remaining actionable alleged false statements, as opposed to the dismissed alleged false statements or other causes. In the event that Lead Plaintiff was unable to establish loss causation on some or all of the remaining alleged false statements, the recoverable damages would have been significantly reduced or eliminated altogether. *See* Galdston Decl. ¶11.

Further, Lead Counsel is aware of numerous hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of a case or a decision following a trial on the merits or appeal, the excellent and highly-skilled efforts of members of the securities plaintiffs' bar yielded no fee. For instance, there are numerous appellate decisions affirming summary judgment and directed verdicts for defendants in securities class actions.[5] It is axiomatic that lawyers who specialize in contingent

---

[5] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010); *In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998); *Silver v. H&R Block, Inc.*, 105 F.3d 394 (8th Cir. 1997). Moreover, even plaintiffs who proceed to trial may not prevail or find a favorable verdict overturned on appeal. *See In re BankAtlantic Bancorp Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law after jury rendered verdict in favor of plaintiffs); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict in favor of all defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiffs after a decade of litigation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (reversing plaintiffs' verdict for securities fraud and ordering entry of judgment for defendants); *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' verdict for securities fraud); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (same).

matters operate in a legal environment fraught with uncertainty and the fact of the matter is, winning cases must, in large part, pay for meritorious, but otherwise unsuccessful efforts. Unquestionably, the risks associated with this contingent Litigation were many and in determining whether the requested fee of 25% of the settlement amount is consistent with Seventh Circuit precedent, the Court should take this dynamic into account. *See*, *e.g.*, *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one was undercompensated.").

In sum, the only certainties regarding this case were that Defendants – separately represented by two experienced and well-respected law firms – would have continued to vigorously dispute the Class' claims at trial and on appeal, and the risk of recovering nothing was real. The litigation risks, combined with the substantial recovery of 40% of estimated damages, justifies the requested 25% fee. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1032 (N.D. Ill. 2011); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002).

### C.    The Requested Fee Is Consistent With, Or Less Than, Seventh Circuit Authority

Fee awards of 25% –  or more – are common in the context of securities fraud class actions and Lead Counsel's 25% request here is consistent with, or less than, awards affirmed by the Seventh Circuit. *See*, *e.g.*, *Motorola*, 2013 WL 4082893 (Seventh Circuit affirming fee award of 27.5% of $200 million securities class action settlement); *see also AON Corp.*, 415 F.3d at 600 (affirming fee award of 30% of $7.25 million securities class action settlement; finding that "data on fees awarded in other class actions in the jurisdiction" combined with the quality of representation, comprised "the same type of evidence needed to mimic the market per *Synthroid I*.").

The requested fee percentage is also consistent with, or less than, fee percentages awarded by this Court, and other courts within this Circuit, in securities class actions and other

common fund cases. *See*, *e.g.*, *White v. Heartland High-Yield Mun. Bond Fund*, Case No. 00-C-1388, Order filed June 13, 2006 (ECF No. 429) (E.D. Wis.) (Stadtmueller, J.) (awarding 30% of settlement fund in securities class action). As this Court recognized in a consumer common fund class action, an award of 30% (higher than the 25% requested here) "falls within the normal percentage range of common fund attorney fee awards approved by courts." *McKinnie*, 678 F. Supp. 2d at 816 (citing *4 Newberg on Class Actions*, § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement)).[6]

The requested 25% fee percentage is also consistent with, or lower than, the fee percentages awarded in other securities class actions, as noted in published historical and updated empirical data.[7]

---

[6] *See also*, *e.g.*, *Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, No. 04 C 1107, slip op. (N.D. Ill. July 24, 2006) (30% of settlement fund); *Weiner v. The Quaker Oats Co.*, No. 98 C 3123 (RP), slip op. (N.D. Ill. Sept. 14, 2001) (33%); *In re Nanophase Techs. Corp. Sec. Litig.*, No. 98 C 3450, slip op. (N.D. Ill. Mar. 27, 2001) (33%); *In re Spyglass, Inc. Sec. Litig.,* No. 99 C 0512, slip op. (N.D. Ill. May 23, 2000) (33%); *In re First Merchs. Acceptance Corp. Sec. Litig.*, No. 97 C 2715, slip op. (N.D. Ill. Apr. 21, 2000) (33%); *In re Caremark Int'l Inc. Sec. Litig.*, No. 94 C 4751, slip op. (N.D. Ill. Dec. 15, 1997) (33%); *In re Nuveen Fund Litig.*, No. 94 C 360, slip op. (N.D. Ill. June 3, 1997) (33%); *In re Soybean Futures Litig.*, No. 89 C 7009, slip op. (N.D. Ill. Nov. 27, 1996) (33%); *Liebhard v. Square D Co.*, No. 91 C 1103, slip op. (N.D. Ill. June 15, 1993) (33%); *First Interstate Bank of Nev., N.A. v. Nat'l Republic Bank of Chicago*, No. 80 C 6410, slip op. (N.D. Ill. Feb. 12, 1998) (39%).

[7] *See*, *e.g.*, NERA, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) ("Regardless of case size, fees average approximately 32 percent of the settlement"; finding that of the 18 settlements analyzed within the 7th Circuit, the fee awards averaged 31.8); NERA, *Recent Trends in Securities Class Action Litigation: 2011 Mid-Year Review* (NERA July 2011) (finding that median attorneys' fees in securities class actions settling between $10 and $24.9 million was 30%); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 Journal of Empirical Legal Studies, 811, 835, 839 (2010) (mean and median fee awards in securities class actions during the time period of 2006 through 2007 were 24.7% and 25.0%, respectively; for securities class action settlements in the Seventh Circuit, the mean and median fee awards were 27.4% and 29.0%, respectively).

### D. Lead Counsel Provided The Class With Quality Legal Services That Produced Excellent Results

The Seventh Circuit has recognized that the quality of legal services rendered is a relevant factor to consider in evaluating a contingent fee award. *AON Corp.*, 415 F.3d at 600; *Synthroid I*, 264 F.3d at 721. In appointing Bernstein Litowitz as Lead Counsel, the Court noted that it "is very qualified in the area of securities class action litigation, and will undoubtedly be able to prosecute this case vigorously." Order dated Nov. 14, 2012 (ECF No. 16), at p. 3. Indeed, the attorneys at Lead Counsel Bernstein Litowitz are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record of prosecuting securities cases throughout the Country.[8]

Both prior to and following its appointment as Lead Counsel, Bernstein Litowitz has confirmed the Court's finding and vigorously prosecuted this case for the benefit of the Class. As a result of Lead Counsel's diligent efforts on behalf of the Class and their skill and expertise, Lead Counsel was able to negotiate a very favorable result for the Class, representing approximately 40% of the estimated recoverable damages. *See* Galdston Decl. ¶15. This recovery is all the more impressive in light of empirical evidence demonstrating that, on average, cases like this typically settle in the single-digit percentages of investor losses.[9]

---

[8] *See* Firm Resume of Lead Counsel Bernstein Litowitz Berger & Grossmann LLP, previously filed with the Court (ECF No. 12-4).

[9] *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) (affirming approval of settlement that was between 3.2% and 12% of recoverable damages; "[i]n fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (affirming in part *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (approving settlement valued at 3.2% to 3.7% as "'well within the ball park'")); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 78595 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (the "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (settlement representing 3.8% of plaintiffs' damage calculation was

In addition, Lead Counsel was opposed in this case by two nationally known and highly capable law firms of Milbank, Tweed, Hadley & McCloy LLP and Reed Smith LLP and their respective able local counsel, which spared no effort in their zealous defense of the Litigation. In the face of this formidable opposition, Lead Counsel pressed forward with Lead Plaintiff's claims, and developed the Litigation so as to persuade Defendants to settle the case on terms favorable to the Class. The ability of Lead Counsel to obtain a favorable result for the Class while litigating against these powerful defense firms further evidences the quality of Lead Counsel's work and weighs in favor of the Court granting the request here.

### E. Lead Plaintiff Independently Assessed And Approved The 25% Fee Request

The Court-appointed Lead Plaintiff, Pension Trust Fund for Operating Engineers, is a sophisticated institutional investor. Representatives of the Lead Plaintiff were directly involved in the prosecution and settlement of the case on behalf of the Class. Lead Plaintiff has approved the fee request sought here, after taking into account Lead Counsel's high quality of representation and diligence in effectively and efficiently prosecuting the Litigation, as well as the complex issues involved, and the real risks presented from the outset of the case. *See* Lead Plaintiff Decl. ¶6. Based on its consideration of these factors, the Lead Plaintiff believes that the requested 25% fee is reasonable. *Id.* The sophisticated institutional investor lead plaintiff's approval supports the fee request. *See Motorola*, 2013 WL 4082893, at *3.

---

"within the range of reasonableness"); Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 7 (Cornerstone Research 2012) (all settlements as a percentage of estimated damages averaged 2.1% in 2011 and 3.3% from 1996-2010); Renzo Comolli, Ron Miller, John Montgomery & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review*, at 30 (NERA Economic Consulting 2012) (the median ratio of settlements to investor losses was 2.4% in 2010, 1.3% in 2011 and 1.2% in the first half of 2012).

### F. The Reaction Of Class Members Supports
### The Reasonableness Of The Requested Award

As explained in the Walter Declaration (Exhibit B to the Galdston Decl.), pursuant to the Court's Preliminary Approval Order, copies of the Notice were disseminated to more than 10,000 potential Class Members and a Summary Notice published in the national edition of *The Investor's Business Daily* and transmitted over the *PR Newswire*.  *See* Walter Decl. ¶¶2-9.  The Court-approved Notice advised potential Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and reimbursement of litigation expenses in an amount not to exceed $85,000.00, and interest thereon.  Significantly, the actual expense request of $54,926.82 is significantly lower than the maximum amount stated in the Notice.  To date no objection to Lead Counsel's attorneys' fee and expense request has been received.  In the event that any objections are received, Lead Plaintiff will address them in its Reply brief to be filed in advance of the Final Approval Hearing.

## IV. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel also requests an award of the litigation expenses incurred by Plaintiffs' Counsel in connection with the prosecution of the Litigation.  Lead Counsel Bernstein Litowitz and Liaison Counsel Fox, O'Neill & Shannon, S.C. have submitted separate declarations herewith attesting to the amount and accuracy of their expenses.  *See* Exhibits C-1 and C-2.  *See Synthroid I*, 264 F.3d at 722 (should counsel submit sufficiently detailed expense reports and records, "a federal court should not require more" for purposes of determining the reasonableness of the request for reimbursement).  Lead Counsel's litigation expenses total $54,926.82.  Representing less than one-half of one percent of the settlement amount, this is a relatively modest expense request.  Indeed, empirical study of the cost and expense of class actions finds that the average request for expenses equals 4% of the relief obtained.  *See* Theodore Eisenburg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An*

*Empirical Study*, 1 Journal of Empirical Legal Studies, 27, 70 (2004); *cited with approval in AT&T Mobility II,* 792 F. Supp. 2d at 1040-41.

The expenses for which reimbursement is sought here – including, for example, charges for Lead Plaintiff's expert, mediation fees, photocopying, telephone, postal and express mail charges – are the type of expenses routinely charged to hourly paying clients, and were necessary and appropriate for the prosecution of this complex securities class action. *See* Galdston Decl. ¶83. As in the private market, such expenses are reimbursable from a fund recovered by counsel for the benefit of the class. *See, e.g., In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 570 (7th Cir. 1992) (finding "clear error" where district court refused to allow reimbursement for computerized legal search services); *Synthroid Mktg. Litig.*, 264 F.3d at 722 (rejecting district court's refusal to authorize full reimbursement for expenses, explaining "reducing [expenses] because the district judge thinks costs too high in general is not [fine].").

## V.     CONCLUSION

For all of the reasons above, Lead Counsel respectfully requests that the Court approve the fee and expense application.

Dated:  November 14, 2013          Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP

        */s/ Benjamin Galdston*
        BENJAMIN GALDSTON

Blair A. Nicholas
Niki L. Mendoza
Benjamin Galdston
Joseph W. Goodman
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0700
Fax:    (858) 793-0323
blairn@blbglaw.com
nikim@blbglaw.com
beng@blbglaw.com
joseph.goodman@blbglaw.com

-14-

*Counsel for Lead Plaintiff the Pension Trust Fund for Operating Engineers and Lead Counsel for the Class*

FOX, O'NEILL & SHANNON, S.C.

Matthew W. O'Neill
622 North Water Street, Suite 500
Milwaukee, WI 53202
Tel:     (414) 273-3939
Fax:     (414) 273-3947
mwoneill@foslaw.com

*Liaison Counsel for the Class*